# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Cristobal PINO-OCHOA<br>(xx/xx/1966)<br><br>*Defendant(s)* | Case No. 19-928M (NJ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  6/28/19 through 10/9/19  in the county of  Milwaukee  in the
Eastern  District of  Wisconsin  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Distribution of and possession with intent to distribute a controlled substance, specifically 50 grams or more of methamphetamine. |

This criminal complaint is based on these facts:
Please see attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Task Force Officer John Schott, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 10, 2019

_____
*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable Nancy Joseph, Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Task Force Officer John Schott, being first duly sworn, hereby depose and state as follows:

1. I am currently assigned to North Central HIDTA as a Federal law Task Force Officer with the Drug Enforcement Administration (DEA), and have been since March of 2018. During my tenure as a Task Force Officer, I have been involved primarily in the investigation of large scale narcotics traffickers operating not only in the City of Milwaukee and the State of Wisconsin, but also throughout the entire United States based upon the direction of my and/or other investigations that arise through the Milwaukee District Office of the Drug Enforcement Administration. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846; and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

   a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

   b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

1

c.  I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.  I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.  I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.  I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.  I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.  I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.  I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.  I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

3.  The information set forth in this affidavit comes from my personal involvement in this investigation, as well as from information provided to me by other law enforcement officers. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint against Cristobal PINO-OCHOA (DOB: 02-13-1966) for violations of the laws of the United States, that is, possessing with intent to distribute, and distributing, 50 grams

or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

## PROBABLE CAUSE

4. In late June 2019, North Central HIDTA investigators[1] in Milwaukee, Wisconsin established a confidential source (CS), who provided information on a large-scale crystal methamphetamine source of supply (SOS), based out of the Rockford, Illinois region. The CS identified the SOS as Cristobal Pino, a/k/a "Paisa", described as an Hispanic male, approximately 52-54 years old, 5'9" – 5'10", medium build. Investigators showed the CS a state of Illinois DOT photograph (without identifiers) of a Cristobal PINO-OCHOA, Hispanic male, DOB: 02-13-1966, which the CS positively identified as "Paisa."

5. The CS stated he/she has known PINO-OCHOA for approximately one year. During this time, PINO-OCHOA has supplied the CS with quantities of methamphetamine, heroin, cocaine, and marijuana. The CS stated on at least two occasions, PINO-OCHOA has distributed three (3) to four (4) pounds of crystal methamphetamine at a time to the CS in Milwaukee, Wisconsin. The CS stated he/she paid PINO-OCHOA $4,000 per pound of crystal methamphetamine.

6. On June 28, 2019, investigators directed the CS to place a recorded call to PINO-OCHOA, who was using a cellular telephone assigned number (303) 525-9154. During the recorded/monitored call, PINO-OCHOA discussed with the CS a pending drug debt, and that PINO-OCHOA would be able to meet the CS in a few days to settle the debt. PINO-OCHOA also

---

[1] Throughout this affidavit, reference will be made to investigators or law-enforcement officers. Investigators or law-enforcement officers are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

told the CS that PINO-OCHOA planned to travel to Colorado, where he intended to obtain and bring back "fifteen". The CS believed that PINO-OCHOA meant that he intended to retrieve fifteen (15) pounds of crystal methamphetamine for later distribution to the CS.

7. On July 3, 2019, investigators directed the CS to meet with PINO-OCHOA in order to make a controlled payment to PINO-OCHOA for the above-referenced outstanding drug debt. Prior to the controlled payment, investigators searched both the CS and the CS's vehicle for contraband, which met with negative results. The CS was provided $12,000.00 in pre-recorded funds, and a covert audio/video recording/transmitting device to capture the meeting with PINO-OCHOA. Investigators observed PINO-OCHOA arrive at a pre-determined location IN Milwaukee, Wisconsin, where the CS provided PINO-OCHOA the $12,000 in pre-recorded funds. After the money transfer, PINO-OCHOA advised the CS that PINO-OCHOA would travel to Colorado to obtain ten (10) pounds of crystal methamphetamine for the CS. Following the meeting, the CS gave the covert audio/video recording/transmitting device to investigators. Investigators also searched both the CS and the CS's vehicle, which met with negative results.

8. On July 23, 2019, investigators had the CS make a controlled purchase of approximately one (1) pound of crystal methamphetamine from PINO-OCHOA in Milwaukee, Wisconsin. Prior to the drug/money transaction, investigators searched both the CS and the CS's vehicle for contraband, which met with negative results. The CS was provided with $4,000.00 in pre-recorded funds, and a covert audio/video recording/transmitting device to capture the meeting with PINO-OCHOA. Later that day, PINO-OCHOA arrived at the agreed meet location in Milwaukee, Wisconsin in a black Chevrolet Equinox, bearing Illinois registration 776592, which was registered to PINO-OCHOA. Investigators observed the CS enter the front passenger seat of

4

PINO-OCHOA's vehicle. After a few minutes, the CS exited PINO-OCHOA's vehicle, whereupon PINO-OCHOA departed the area.

9. Immediately following the meeting, investigators debriefed the CS, who relinquished a blue Thermos, containing a plastic bag that held the suspect crystal methamphetamine. Investigators searched both the CS and the CS's vehicle for contraband, which met with negative results. The CS also relinquished the covert audio/video recording/transmitting devices to investigators. The CS detailed the transaction with PINO-OCHOA. Specifically, the CS stated he/she entered PINO-OCHOA's vehicle, and PINO-OCHOA handed the CS the blue Thermos containing the suspect crystal methamphetamine. During the drug/money transaction, PINO-OCHOA told the CS that PINO-OCHOA had eight (8) additional pounds of crystal methamphetamine located at PINO-OCHOA's wife's residence in Colorado. PINO-OCHOA said he would bring the quantity of crystal methamphetamine to the CS in the near future, but would have to charge the CS $4,500.00 per pound to cover transportation costs. Investigators later conducted a field test of the suspected crystal methamphetamine (approximately 496 grams), which indicated positive for the presence of methamphetamine.

10. On October 8, 2019, the CS informed investigators that he/she received a telephone call from PINO-OCHOA. The call was not recorded/monitored. According to the CS, PINO-OCHOA informed the CS that PINO-OCHOA was prepared to distribute four (4) pounds of crystal methamphetamine to the CS. During the telephone call, PINO-OCHOA agreed to come to Milwaukee, Wisconsin on October 9, 2019 to bring the crystal methamphetamine to the CS. On October 9, 2019, investigators prepared the CS for the impending drug transaction with PINO-OCHOA. On October 9, 2019, the CS communicated with PINO-OCHOA via telephone call. The telephone call was not monitored nor was it recorded. During said telephone call, the CS and

5

Case 2:19-mj-00928 Filed 10/10/19 Page 6 of 8 Document 1

PINO-OCHOA agreed to the meet at 1743 S. Muskego Avenue, Milwaukee, Wisconsin around 12:30 p.m.

11. On October 9, 2019, investigators established surveillance near 1743 S. Muskego Avenue, Milwaukee, Wisconsin and observed PINO-OCHOA arrive in 2012 Chevrolet Equinox bearing Illinois license plates. Following confirmation of PINO-OCHOA's arrival, investigators approached PINO-OCHOA's vehicle and arrested him without incident. Investigators recovered two gallon-sized clear plastic bags located in a hollowed out area in the engine compartment of the Chevrolet Equinox. One gallon-sized bag contained 1070.30 grams of suspected crystal methamphetamine and the other gallon-sized bag contained 1061.80 grams of crystal methamphetamine, totaling 2,132.10 grams. Investigators later conducted a field test of the suspected crystal methamphetamine, which indicated positive for the presence of methamphetamine.

12. Following the arrest of PINO-OCHOA, investigators conducted a post-*Mirandized* interview of PINO-OCHOA. During the interview, he admitted to having transported the 2,132.10 grams of methamphetamine from the Illinois area to Wisconsin for further distribution. PINO-OCHOA also said he had transported methamphetamine from Illinois to Wisconsin at least four (4) prior times.

13. Based on the above information and facts, your Affiant submits there is probable cause to believe that Cristobal PINO-OCHOA, in the Eastern District of Wisconsin, possessed with intent to distribute, and distributed, 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

FURTHER YOUR AFFIANT SAYETH NAUGHT

_____
JOHN SCHOTT
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before
me this 10th day of October, 2019

_____
NANCY JOSEPH
United States Magistrate Judge
Eastern District of Wisconsin